# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MATEEN ABDUL-AZIZ,

        Petitioner,

v.

                              Civil Action No.  1:05cv86
                              Criminal Action No.  1:03cr39-1
                              (Judge Stamp)

UNITED STATES OF AMERICA,

        Respondent.

## OPINION/REPORT AND RECOMMENDATION

On May 27, 2005, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody and a memorandum in support.  That

same day, the petitioner also filed a Motion to Appoint Counsel and Motion for Hearing.   On

September 30, 2005, the respondent was directed to file a response to the petition.  A response was

filed on October 31, 2005.  The petitioner filed his reply on May 15, 2006.  This case is before the

undersigned for a report and recommendation pursuant to Standing Order No. 4 and LR PL P 83.01,

et seq.

## I.   Procedural History

### A.   Conviction and Sentence

On July 3, 2003, the petitioner was named in four counts (1, 19, 24, 25) of a twenty-nine

count indictment.  Count one charged that the petitioner conspired to distribute in excess of five

grams of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  Counts nineteen, twenty-

four and twenty-five charged that the petitioner aided and abetted in the distribution of cocaine within

1,000 feet of a playground in violation of 21 U.S.C. §§ 841(a)(1)and 841(b)(1)(C).

On December 3, 2003, the petitioner pleaded guilty to count nineteen of the indictment, aiding and abetting the distribution of cocaine base within 1,000 feet of a playground. On May 17, 2004, the petitioner was sentenced to 168 months imprisonment.

**B.   Direct Appeal**

The petitioner did not file a direct appeal of his conviction and sentence.

**C.   Federal Habeas Corpus**

Claims of the Petition

(1) Ineffective assistance of counsel for

(a) incompetently advising the petitioner to enter into a stipulation that was in violation of the clear provision of USSG § 6B1.4,

(b) inducing the petitioner to plead guilty based on incompetent legal advice,

(c) inducing the petitioner to plead through coercion, persuasion, duress and an oral bargain not memorialized in his final written plea agreement,

(d) committing an act of fraud or misrepresentation during the Rule 11 plea hearing when he failed to give the Court full disclosure of the plea bargain,

(e) failing to object to the PSR's recommendation of 108 grams of cocaine base allegedly seized in Pennsylvania and used as relevant conduct under USSG § 1B1.3,

(f) failing to hold the government to its burden of proof by a preponderance of the evidence that 108 grams of cocaine base was a warranted application of 1B1.3 sentencing enhancement, and

(g) tainting his representation of the petitioner with a conflict of interest;

(2) Conviction was obtained by a plea of guilty made involuntarily or without understanding of the direct consequences of the plea;

(3) The district court erred by not enforcing the conditional written plea agreement when the sentencing court failed to require the government to prove its burden of proof by a preponderance of the evidence as to the disputed 108 grams, thus enhancing the petitioner's sentence with a disputed amount that was never determined;

(4) Counsel was *per se* ineffective for failing to file an appeal;

(5) The Court was without subject matter jurisdiction to punish the petitioner for conduct or crimes that occurred in the State of Pennsylvania; and

(6) the United States Sentencing Guidelines are unconstitutional and the Court was incorrect to apply those guidelines to the petitioner's sentence.

Government's Response

(1) The petitioner's plea was knowing and voluntary;

(2) Counsel was not ineffective;

(3) The Government did not breach the plea agreement; and

(4) Blakely and Booker do not apply to this defendant.[1]

---

[1] Blakely v. Washington, 542 U.S. 296 (2004), holds that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that Blakely applies to federal sentencing guidelines. Specifically, in Booker, the Supreme Court issued a two part decision. In the first part, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. In the second part of the decision, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory and established an unreasonableness standard of review for sentences on appeal.

Petitioner's Reply

(1) In his reply, the petitioner concedes that his argument in ground five lacks legal merit and that <u>Booker</u> and <u>Blakely</u> do not apply retroactively. Accordingly, the plaintiff seeks to voluntarily dismiss grounds five and six.

(2) The petitioner asserts that the respondent has improperly grouped together the petitioner's individual claims. Therefore, the petitioner argues that the respondent has failed to properly respond to the petition pursuant to Rule 5(b) of the Rules Governing Section 2255 Proceedings. Consequently, the petitioner argues that the government has conceded those claims which it did not specifically address.

(3) The petitioner's claims unquestionably show that he is entitled to relief.

## II.   <u>Analysis</u>

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

## A.   <u>Ground One - Ineffective Assistance of Counsel</u>

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the

petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**<u>Ground 1(a)</u>**

In this ground, the petitioner asserts that his plea was involuntary because counsel incompetently advised him to enter into a stipulation that was a clear violation of U.S.S.G. § 6B1.4. More specifically, the petitioner asserts that the stipulation he agreed to, 152 grams of cocaine base

as relevant conduct, was ambiguous and misleading because it relieved the government of its burden of proof and failed to allow the petitioner to produce evidence to contradict the facts underlying his stipulation. Although the petitioner concedes that the plea agreement itself "serves as a stipulation that no proof by the [government] need be advanced" because it supplies both the evidence and verdict necessary to end the controversy, the petitioner nevertheless contends that he maintained his right to contest the stipulation during sentencing, thereby shifting the burden of proof back to the government to prove, by relevant and reliable evidence, the drug weight. See Memorandum (dckt. 2/289) at 17-18 (citing Boykin v. Alabama, 395 U.S. 242-43 (1969); United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993)). The petitioner further asserts that although sentencing factors may generally be either stipulated or contested, by preserving his right to contest the stipulation, the stipulation became ambiguous and misleading. Id. at 18.

In addition, the petitioner asserts that the stipulation violated § 6B1.4 because it failed to "identify all areas of [the] agreement, disagreement, and uncertainty that were relevant to his sentencing." Id. For example, the petitioner asserts that during the plea bargaining process, there was disagreement between himself and the government as to whether the 108 grams of cocaine seized in Pennsylvania constituted relevant conduct. Id. The petitioner asserts that he believes the Pennsylvania offense was not connected to the West Virginia offenses, and therefore, the 108 grams could not be used as relevant conduct. Id. Nonetheless, the petitioner contends that counsel "duped" him into believing that the only way to challenge the 108 grams was to enter into a stipulation which reserved his right to contest the drugs at sentencing. Id. at 19.

As another example, the petitioner asserts that there were "unresolved issues between him and the government that were not disclosed in the stipulation of his conditional written plea agreement"

due to counsel's neglect or ignorance. Id. The petitioner further contends that "any reasonably competent attorney would have informed or at least discussed the concept of stipulation and the impact it would have on his client's sentence." Id. In this case, the petitioner asserts that the stipulation should not have contained misleading facts, that counsel should have advised him of the relevant facts of the stipulation, and that counsel should have advised him of the facts in dispute. Id. at 20. Thus, the petitioner asserts that counsel's failure to advise him that the stipulation violated U.S.S.G. § 6B1.4 was unreasonable under prevailing professional norms. Id. at 21. The petitioner asserts also that had counsel appropriately explained the "significance and consequences associated with entering into a stipulation of facts to relevant conduct," he would not have pleaded guilty. Id. at 22.

The basis for ground 1(a) is the petitioner's contention that the stipulation in this case violated U.S.S.G. § 6B1.4 and that counsel was ineffective for failing to recognize the violation and advise the petitioner accordingly. Therefore, in order for ground 1(a) to have merit, the petitioner must show that his relevant conduct stipulation violated U.S.S.G. § 6B1.4. However, a review of the stipulation shows that it does not run afoul of § 6B1.4. Moreover, even assuming counsel did not fully inform the petitioner at the time the plea was being negotiated, the transcripts of the plea hearing clearly establish that the petitioner was fully aware of the consequences of the stipulation at the time he entered his plea.[2] Thus, there is no prejudice.

_____

[2] At the petitioner's plea hearing, the government set forth the parties' agreement for the Court. As to the relevant conduct stipulation, the government explained: "[u]nder paragraph 10, the parties stipulate and agree that the drug relevant conduct of the defendant is 152 grams of cocaine base. There is a further understanding that the defendant reserves the right to contest the issue of the 108 grams seized -- actually all of the drugs seized, about 109 grams of actual application under the Guidelines to either 1B1.3 or any double jeopardy issues, he reserves that right to the drugs seized in Pennsylvania." Plea Transcripts (dckt. 281) at 8.
    When later asked if he understood and agreed with all of the provisions of the plea agreement, the

## Ground 1(b)

In this ground, the petitioner asserts that his counsel "induced him to plead guilty based on incompetent legal advice." <u>See</u> Memorandum (dckt. 2/289) at 23. More specifically, the petitioner asserts that counsel represented to him that "the Double Jeopardy Clause prohibited the government from using the 108 grams of cocaine base allegedly seized in a traffic stop by the Pennsylvania State Police, as relevant conduct." <u>Id.</u> The petitioner contends that such advice was clearly outside the range of reasonably professional conduct because counsel's advice was flagrantly wrong. <u>Id.</u> at 23-24.

In support of this claim, the petitioner asserts that the dual sovereignty doctrine would have allowed both the State and Federal Government to prosecute him with impunity. <u>Id.</u> at 24. The petitioner asserts that the Supreme Court recognized this right more than two decades ago, and that the Fourth Circuit has recognized this tenet as late as 2003. <u>Id.</u> Therefore, counsel should have known that this argument was "black letter law frivolous," and advising the plaintiff otherwise was clearly incompetent. <u>Id.</u> at 24-25. Moreover, the petitioner asserts that counsel urged him to take the plea based on this patently frivolous argument. <u>Id.</u> at 25. Therefore, the petitioner contends that he was "duped" into pleading guilty, hence rendering his plea unknowing and involuntary. <u>Id.</u> at 27-28. Had he not been lead to believe the 108 grams would be excluded, the petitioner asserts that there is a "reasonably probability" that he would have proceeded to trial. <u>Id.</u> at 29.

_____

petitioner said that he understood. <u>Id.</u> at 10. Moreover, the Court advised the petitioner that it was "not bound by any recommendation or stipulation contained in the plea agreement" and that if the Court later found, based upon "independent investigation by the probation office or any other evidence, that [it] could not go along with the stipulation or recommendation, that [petitioner] would still be bound by [the] plea agreement and would not have a right later on to withdraw it." <u>Id.</u> at 10-11. The petitioner stated that he understood. <u>Id.</u> When later asked if petitioner's counsel had adequately and effectively represented him, the petitioner stated that he had. <u>Id.</u> at 24. The petitioner also verified his belief that counsel had left nothing undone. <u>Id.</u>

Even assuming that counsel misadvised petitioner as to this double jeopardy claim, the petitioner has suffered no prejudice as a result of that misadvise. According to the PSR, the probation officer found:

> 47.    The total weight attributable via historical information is approximately 455 grams of crack cocaine. This officer has only included the crack cocaine seized via the traffic stop in Pennsylvania (108 grams). If the Court chooses to include the other drugs seized during the traffic stop, then the total of all substances must be converted to marijuana. Adding the marijuana and cocaine hydrochloride would only increase the total weight by approximately 22 kg of marijuana and would not change the base offense level.
> 48.    It appears that based on the above information there is approximately 567 grams of cocaine base attributable to this defendant. Based on the inherent inaccuracies of historical information and in an effort to benefit the defendant, it appears the stipulation of 152 grams of cocaine base is a fair and equitable estimation of the defendant's total drug relevant conduct which requires a base offense level of 34. If the Court only included actual drugs seized, the defendant would fall within a base offense level of 32. If the Court finds the entire weight reported above is attributable to the defendant, the base offense level would be 36. However, this offense does fall under U.S.S.G. § 2D1.2(a)(2), which requires one additional level be added to the base offense level determined above.

PSR (dckt. 264) at 11.

Therefore, although the petitioner's relevant conduct stipulation included the 108 grams of cocaine base seized in Pennsylvania, even if counsel would have successfully challenged that specific amount of drugs, there were more than 108 grams of other drugs which could have taken its place. It is clear from the PSR that the probation officer included the 108 grams only because it was drugs in hand, inherently more reliable than other drug weights attributable via only witness testimony and historical information. It was clearly advantageous to the petitioner to stipulate to 152 grams of relevant conduct, even including the 108 grams seized in Pennsylvania. Accordingly, even if petitioner's counsel misadvised him as to the 108 grams seized in Pennsylvania, the petitioner was

not prejudiced by such advice.

### Ground 1(c)

In this ground, the petitioner asserts that he was induced by counsel and the Assistant United States Attorney ("AUSA"), to plead guilty through "coercion, duress, [and] persuasion." <u>See</u> Memorandum (dckt 2/289) at 30. In support of this claim, the petitioner asserts that he entered into an oral bargain with the government to plead guilty in exchange for his brothers not being exposed to increased terms of imprisonment. <u>Id.</u> The petitioner asserts that even during the plea process, he adamantly informed counsel that he wanted to proceed to trial. <u>Id.</u> However, the petitioner contends that counsel "sided with the government to excert (sic) undue pressure through coercion and persuasion to induce Petitioner to enter a guilty plea against his own expressed intentions of proceeding to trial." <u>Id.</u> at 32.

This claim is refuted by the record. At the plea hearing, the government orally set forth the terms of the written plea agreement. <u>See</u> Plea Transcripts (dckt. 281) at 5-10. At the conclusion of the government's recitation, the petitioner was asked if the plea agreement contained his signature. <u>Id.</u> at 10. The petitioner stated that it did. <u>Id.</u> The petitioner was then asked if he understood and agreed with the terms and provision of the agreement. <u>Id.</u> at 10. The petitioner stated that he did. <u>Id.</u> The petitioner then confirmed that he had gone over the agreement with counsel before he signed it, and that counsel had answered all of his questions about the agreement. <u>Id.</u> The defendant was then specifically asked whether he believed there were any other side deals or agreements with the government, not contained in the written agreement. <u>Id.</u> at 11. The petitioner said that there were no other agreements. <u>Id.</u>

"Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack

of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

At the plea hearing, the petitioner stated that there were no agreements, verbal or otherwise, outside of the written plea agreement. It was not until after the petitioner had been sentenced, and decided he was unhappy with his sentence, that he asserted he was coerced or persuaded to take the plea by outside verbal agreements. The petitioner has not offered "clear and convincing evidence" which would call into question his statements made under oath during the plea colloquy. Nor has the petitioner provided sufficient evidence that any outside agreements existed. See Sutton v. United States, supra (petitioner must establish grounds by a preponderance of the evidence).[3] Accordingly, this claim should be denied.

### Ground 1(d)

In this ground, the petitioner asserts that during the Rule 11 Plea Colloquy, the AUSA "committed an act of Fraud and/or misrepresentation," on the Court "by virtue of his failure to give the District Judge 'full disclosure' of the plea bargain reached between Petitioner and the government." See Memorandum at 33. Specifically, the petitioner asserts that the AUSA misled the

---

[3] The petitioner's only "evidence" of an outside agreement is his self-serving and conclusory allegations.

district judge by failing to inform the Court that the written plea agreement constituted the entire agreement between the parties. Id. at 33-34. Moreover, the petitioner asserts that counsel failed to object or set the record straight. Id. at 34. Therefore, it was impossible for the Court to properly ascertain whether the petitioner had truly, and of his own free will, entered a knowing and voluntary plea. Id. Additionally, the petitioner asserts that the Court never questioned him, defense counsel or the AUSA as to the existence of any other bargains, oral or otherwise. Id. at 34-35.

As noted in ground 1(c) above, the undersigned has found no credible evidence of any outside bargains, whether verbal or otherwise. Therefore, the petitioner has failed to establish that either the government, or defense counsel, made false or fraudulent misrepresentations to the Court. Accordingly, this ground should be denied.

### Ground 1(e)

In this ground, the petitioner asserts that pursuant to U.S.S.G. § 1B1.3(a)(2), the Court was required to include "all acts and omission committed, aided, [and] abetted by [Petitioner] that were part of the same course of conduct or common scheme or plan as his offense or conviction." See Memorandum (dckt. 2/289) at 37. Moreover, based on the facts of this case, the petitioner asserts that there was insufficient evidence to conclude that the 108 grams of cocaine base seized in Pennsylvania, was a part of the same course of conduct for which he was indicted. Id. at 38. It appears that the petitioner's argument is based on the difference between the terms "possession" and "distribution." Id. at 38-40. Therefore, the petitioner contends that counsel should have objected to the Presentence Sentence Report's ("PSR") inclusion of the 108 grams seized in Pennsylvania as part of his relevant conduct and that counsel was ineffective for not doing so. Id. at 41. The petitioner asserts that had counsel objected, the sentencing court or the probation office would have made a

"correct relevant conduct assessment, thereby, resulting in a 'different outcome.'"[4] Id. at 42.

This claim is nothing more than pure speculation. As noted in ground 1(b) above, the PSR found that up to 567 grams of relevant conduct could have been attributed to the defendant. Thus, his 152 gram stipulation was both reasonable and beneficial under the circumstances. As part of that stipulation, the probation office included the 108 grams seized in Pennsylvania in the petitioner's relevant conduct. PSR (dckt. 264) at 11. However, even assuming that counsel should have objected to this amount, there is no reason to believe that such an objection would have been successful,[5] or that excluding this amount from the petitioner's relevant conduct calculation would have resulted in a lesser sentence. In fact, even excluding the 108 grams, there were still 455 grams that counsel would have had to contend with. It is unlikely, if not improbable, that counsel could have successfully excluded enough drug conduct to make a difference. Therefore, this ground should be denied.[6]

_____

[4] Specifically, the petitioner asserts that by decreasing his relevant conduct by at least 108 grams, his base offense level of 34 would have been reduced to at least 28. If you subtract 2 points for acceptance of responsibility, and factor in his criminal history category of III, the petitioner asserts that his sentencing range would have been 97-121 months. The petitioner's actual sentence was 168 months.

[5] According to the respondent, in response to the objections to the PSR, the probation officer stated his belief that cocaine seized in Pennsylvania should be considered relevant conduct to the instant federal offense. See Respondent's Response to Petition (dckt. 313) at 11.

[6] Pursuant to U.S.S.G. § 1B1.3(a)(1) (2003), relevant conduct includes:

(A)    all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

In petitioner's case, the investigation into his alleged drug offenses occurred over a period of 18 months. The traffic stop in Pennsylvania, which resulted in the seizure of the 108 grams of cocaine base

**Ground 1(f)**

In this ground, the petitioner asserts that by reserving the right to contest the disputed drugs in his plea, at the time of sentencing, the government should have had the burden of establishing that the disputed drugs were appropriate relevant conduct. See Memorandum (dckt. 2/289) at 43. Because the government failed to do so, the petitioner asserts that his sentence is illegal. Id.

In support of his claim, the petitioner asserts that the government failed to present any aggravating evidence to warrant the petitioner's 168 month sentence. Id. at 44. The petitioner asserts that counsel's failure to hold the government to its burden of proof was ineffective. Id. at 44-45. Furthermore, the petitioner asserts that had counsel raised this issue at sentencing, it is "reasonable to believe" that the outcome of the proceedings would have been different. Id. at 46.

"A plea of guilty is more than a voluntary confession made in open court. It also serves as a stipulation that no proof by the prosecution need by (sic) advanced . . . It supplies both evidence and verdict, ending controversy." Boykin v. Alabama, 395 U.S. 238, 242 n. 4 (1969) (quoting Woodard v. State, 42 Ala.App. 552, 171 So.2d 462, 469 (Ala. 1965)). However, "[w]hen the amount of drugs for which a defendant is to be held responsible is disputed, the district court must make an independent resolution of the factual issue at sentencing," where "[t]he government bears the burden of proving by a preponderance of the evidence, the quantity of drugs for which a defendant should be held accountable." See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) (citing U.S.S.G. § 6A1.3(b) and United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990)). The

---

occurred during that time frame. Moreover, cocaine base was the main drug distributed by the petitioner during the investigation. Significantly, when the petitioner was arrested in Pennsylvania, he was carrying the 108 grams in his car and was headed back to West Virginia where the alleged drug distribution was taking place. It is clear from these facts that the 108 grams was appropriately considered relevant conduct and even had counsel objected, such an objection would have been unsuccessful.

government can meet its burden "by a stipulation of the parties that the court determines to have a reasonable factual basis." <u>Id.</u> Moreover, the government carries its burden "if a defendant fails to properly object to a recommended finding in a presentence report . . ." <u>Id.</u>

Here, there was a stipulation between the parties that the defendant's relevant conduct was 152 grams. Counsel objected to the inclusion of the 108 grams on the basis of a double jeopardy claim. That objection was later withdrawn. Therefore, the quantity of drugs was not in dispute at sentencing and the petitioner's stipulation and guilty plea were enough for the government to meet its burden of proof. In addition, although the petitioner reserved the right to challenge the 108 grams, in his plea agreement, counsel was not required to do so. In fact, counsel did challenge the inclusion of the 108 grams, but later withdrew that objection when the basis for it disappeared. The fact that the petitioner thinks counsel should have made other objections on different grounds is not evidence of ineffectiveness. Even if it was, the petitioner offers nothing more than conjecture and speculation to show that he was prejudiced by counsel's failure to file additional objections. <u>See</u> Ground 1(e), <u>infra</u>. Accordingly, this ground should be denied.

### **Ground 1(g)**

In this ground, the petitioner asserts that his attorney was ineffective due to a conflict of interest.

"The Sixth Amendment guarantees an accused the right to effective assistance of counsel, and an essential aspect of this right is a lawyer 'unhindered by conflicts of interest.'" <u>See</u> <u>United States v. Nicholson</u>, 475 F.3d 241, 248 (4th Cir. 2007) (citing <u>Strickland v. Washington</u>, <u>supra</u> and quoting <u>Mickens v. Taylor</u>, 240 F.3d 348, 355 (4th Cir. 2001) (en banc), *aff'd*, 535 U.S. 162 (2002)). When a petitioner asserts an ineffective assistance of counsel claim based on a conflict of interest, the

standard for such a claim is set forth in <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980). <u>Nicholson</u> at 249. "To establish a conflict of interest resulted in ineffective assistance, '[m]ore than a mere possibility of conflict must be shown.'" <u>Id.</u> (quoting <u>United States v. Tatum</u>, 943 F.2d 370, 375 (4th Cir. 1991)). Instead, the petitioner must show "(1) that his lawyer was under an actual conflict of interest, and (2) that this conflict adversely affected his lawyer's performance." <u>Id.</u> (citing <u>Cuyler v. Sullivan</u>, 446 U.S. at 348) (internal citations omitted).

To show an actual conflict of interest, the petitioner "must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action." <u>Gilbert v. Moore</u>, 134 F.3d 642, 652 (4th Cir. 1998) (en banc) (internal quotations omitted). Alternately, a conflict of interest exists when counsel is regarded to "account to two masters" or when he fails to take action on behalf of one client because it would adversely affect another. <u>United States v. Tatum</u>, 943 F.2d at 376.

The petitioner asserts that this claim can be broken into pre and post plea claims.

### 1. Pre-plea Conflict

In support of this ground, the petitioner asserts that counsel failed to give him his undivided loyalty during the pre-plea stage of his criminal proceedings because of a personal and pecuniary interest. <u>See</u> Memorandum (dckt. 2/289) at 64. Moreover, the petitioner asserts that counsel had a duty of loyalty to the government because of his "overbearing concern" for the petitioner's co-defendants. <u>Id.</u> The petitioner asserts that this conflict of interest worked to his determent during the negotiation of the plea agreement. <u>Id.</u>

In support of this claim, the petitioner asserts that even after he had specifically instructed counsel that he would be proceeding to trial, counsel chose to pursue a plea agreement with the government. <u>Id.</u> In fact, the petitioner asserts that counsel "went behind his back" to negotiate a plea

deal that the petitioner did not want and then waited until the very last minute to advise the petitioner as to what he had done. Id. at 64-65. The petitioner asserts that had his counsel not been tainted by these conflicts of interest, he may have been able to prepare a proper defense for trial and appropriately advocate on the petitioner's behalf. Id. at 65.

As to counsel's pecuniary conflict, the petitioner explains that counsel was paid a retainer of $10,000 to defend the petitioner's innocence at trial. Id. Instead, however, counsel negotiated an unauthorized plea agreement. Id. The petitioner asserts that counsel "chose a course of action that protected his $10,000 retainer" and abandoned the petitioner. Id. Moreover, the petitioner asserts that after he rejected the proffered plea agreement, counsel continued to ignore the petitioner's demands to go to trial and pressed the plea agreement on the petitioner. Id. at 66-67.

As to his personal conflict, it appears that the petitioner is arguing that counsel failed to adequately prepare for trial. Id. at 68-70. Therefore, rather than proceed to trial as the petitioner wanted, counsel pressed the unwanted plea agreement on the petitioner, presumably, so he did not look bad at trial. Id.

Here, the undersigned can find no actual conflict of interest as to the petitioner's pre-plea conflict of interest claims. The petitioner asserts that counsel's attempts to negotiate a plea agreement "behind his back," evidence a conflict of interest merely because the petitioner had expressed no interest in a plea deal. However, advocating for your client, in and of itself, is not evidence of a conflict of interest. Despite the petitioner's insistence on proceeding to trial, counsel may have believed that a negotiated plea deal was in his client's best interest. This is not ineffectiveness. This is simply good lawyering. It is the attorney's role to advise his client on the best course of action under the circumstances. There is nothing ineffective about counsel trying to

convince his client to accept a plea deal, rather than proceed to trial.

Nor is a paid retainer evidence of a conflict of interest. In this case, although the petitioner states that he specifically retained counsel to represent him at trial, the petitioner simplifies the role of a lawyer. The petitioner paid counsel to represent his best interests, not to specifically press one course of action. If counsel believed the plea agreement was the petitioner's best option, than he was required to advise the petitioner so.

Finally, the petitioner has not set out even one piece of evidence to show that counsel was unprepared to go to trial or that his lack of preparation was the reason counsel advised him to accept the plea agreement.

## 2. Post Trial Conflict

In this ground, the petitioner asserts that counsel was "in the untenable position of advancing an objection" that was meritless. See Memorandum (dckt. 2/289) at 70. In support of this claim, the petitioner asserts that counsel's continued assertion that the 108 grams could not be used against him under the Double Jeopardy Clause had to be withdrawn when the State of Pennsylvania dropped all charges related to the 108 grams. Id. Moreover, the petitioner asserts that the objection was withdrawn "behind his back." Id. at 71. To make matters worse, the petitioner asserts that counsel then failed to make any other objections as to whether those drugs could be used to determine the petitioner's relevant conduct. Id. The petitioner asserts that such action shows that counsel abandoned his duty of loyalty to his client and created a conflict of interest. Id.

The petitioner further asserts that, but for counsel's conflict of interest, he could have, and should have, "argued that there was mitigating evidence such as the PSR itself that failed to substantiate a finding that the 108 grams was connect (sic) to the Petitioner's convicted offense." Id.

at 72. Moreover, because of his conflict, counsel "utterly failed to make the government shoulder it's burden of proof at sentencing." Id. at 73. The petitioner asserts that counsel's "interest conflicted with the Petitioner and diverged with respect to the course of action that should have been pursued." Id. As a result, the petitioner asserts that counsel failed to advance the most plausible arguments on his behalf. Id.

Here, the undersigned can find no actual conflict of interest as to the petitioner's post-plea conflict of interest claims. First, the fact that counsel may have advanced an argument that was ultimately made meritless by the actions of a third party, the State of Pennsylvania, does not make a conflict of interest. Second, the failure to make certain objections does not show that counsel abandoned his duty of loyalty to his client. Third, the mere failure to make certain arguments at sentencing does not establish the presence of a conflict of interest either. Accordingly, this ground should be denied.

**B.   Ground Two - Voluntariness of Plea**

"A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so competently and intelligently." Godinez v. Moran, 509 U.S. 389, 396 (1997) (internal citations and quotations omitted). Moreover, competency to stand trial is based on (1) "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and (2) "has a rational as well as factual understanding of the proceedings against him." Id. The same standard applies to competency to plead guilty. Id. at 398-399.

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, before a court accepts a guilty plea, the court must determine that the defendant is competent to enter the plea and that the

plea is knowing and voluntary.  Rule 11 requires that the court personally inform the defendant of, and ensure that he understands, the nature of the charges against him and the consequences of his guilty plea.  United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999).  In doing so, the Court must advise the petitioner of the rights he is giving up by pleading guilty.  Fed.R.Crim.P. 11(b)(1). Moreover, the Court must discuss the nature of the charges against the petitioner, the penalties that could be imposed, and certain other terms or conditions of the plea agreement.  Id.  The Court must then establish that the petitioner is entering the plea voluntarily -- without force, threats, or promises made outside the agreement.   Fed.R.Crim.P 11(b)(2).

In this ground, the petitioner asserts that the sentencing judge failed to comply with the mandates of Rule 11 when the record of the petitioner's plea hearing "undeniably substantiates his claim that the district judge completely failed to ascertain his full understanding of the Drug Weight Clause incorporated into his plea . . ."  See Memorandum (dckt. 2/289) at 48 (internal quotations omitted).  The petitioner asserts that although the sentencing judge ascertained that the petitioner understood the plea, agreed with its provisions, and was fully informed of the terms of the agreement by counsel, the petitioner asserts that the sentencing judge should have gone further with regard to the stipulation, simply because the petitioner reserved his right to challenge the stipulation.  Id. at 49.

Further, the petitioner asserts that the sentencing judge "entirely failed to probe the Petitioner and extract his understanding of [the] Drug Weight Clause, instead" relying solely on the affirmative answers of counsel that the petitioner understood the consequences of pleading guilty.  Id. (internal quotations omitted).  The petitioner contends that his single response that he fully understood the consequences of the plea was not enough to ensure that he actually did.  Id.

In addition, the petitioner asserts that during the plea negotiations, he was led to believe that

he was only agreeing to the stipulation to reserve his right at sentencing to challenge the inclusion of the 108 grams. Id. at 50. The petitioner asserts that had he been in agreement with the stipulation, there would have been no need for him to reserve his right to challenge the drug weight. Id. The petitioner asserts that the reservation of this right should have "raised a red flag" with the sentencing judge, prompting more detailed inquiry of the petitioner's understanding of the plea. Id. at 49, 50. The petitioner further finds it significant that the government did not describe his ability to contest the drug weight clause when explaining the provisions of the plea agreement during the Rule 11 hearing. Id. at 50. In other words, the petitioner concedes that while the sentencing court "flawlessly ensur[ed] that Petitioner understood the rights he would forego by pleading guilty," the Court "utterly failed to advise the Petitioner as to the direct consequences of entering into the stipulation and of the Petitioner's reserved rights in the plea." Id. at 51 (internal quotations omitted).

Based on these facts as presented by the petitioner, he argues that but for the Court's failure to fully ascertained the petitioner's understanding of the direct consequences of the plea, he would not have pleaded guilty. Id. at 52. However, it is clear from the record that the petitioner's plea was knowing and voluntary and this claim should be dismissed.

During the petitioner's Rule 11 hearing, the Court questioned the petitioner about his age, his educational background and if he had any mental illnesses or drug and alcohol problems. Plea Transcript (dckt. 281) at 4. The petitioner stated that he was a 33-year-old college graduate with no mental illness, and no history of drug or alcohol problems. Id. Moreover, the petitioner verified that he was not under the influence of any medications, drugs or alcohol at the time of the plea. Id. The petitioner further denied any hearing problems or other impairments that would hinder his ability to understand the proceedings. Id. at 4-5.

After confirming that the petitioner could read, write and understand the English language, the Court requested the government read the terms of the plea agreement. Id. at 5. The government did so. Id. at 5-10. When the government was finished, the Court ascertained that the signature on the plea agreement was indeed the petitioner's and then asked the petitioner whether he understood and agreed with the terms of the agreement as stated. Id. at 10. The petitioner confirmed that he signed the plea agreement and that he understood and agreed with the provisions therein. Id. Moreover, the petitioner confirmed that he had discussed the plea agreement with counsel prior to signing it and that he understood that the Court was not bound by any recommendation or stipulation made therein. Id. at 10-11. The petitioner then stated that there were no other deals or agreements outside the written plea agreement and that he understood the provision which contained a limited waiver of appellate rights. Id. at 11.

At this point, the Court asked petitioners' counsel whether counsel believed that the petitioner fully understood the limited waiver of appellate rights. Id. at 11-12. Counsel stated that he did. Id. at 12. The Court next ascertained whether the petitioner had received and reviewed the indictment with counsel and that counsel had answered all of the petitioner's questions with regard to same. Id. The petitioner stated that he had. Id. The petitioner then waived his right to a reading of the indictment. Id.

In addition, the Court verified the charge that the petitioner was pleading guilty to and that the petitioner understood the minimum and maximum sentence to which he was exposed. Id. at 12-13. The petitioner then stated that he understood that he could not receive a sentence greater than the statutory maximum and that his guideline sentence could not be determined until after the PSR had been prepared. Id. at 13-14. The Court then explained the concept of relevant conduct and asked the

petitioner if he understood.  Id. at 15.  The petitioner stated that he did.  Id.  The Court further asked the petitioner whether he understood that if his crime occurred within 1,000 feet of a playground that he would be subject to a mandatory minimum sentence of one-year in prison.  Id.  The petitioner stated that he understood.  Id.  The petitioner also stated that he understood the Court could depart from the guidelines, if it so chose.  Id.  The Court again addressed the petitioner's limited waiver of his appellate and collateral appeal rights.  Id. at 15-16.  The petitioner stated that he understood.  Id. at 16.

The Court next explained the rights the petitioner was giving up by pleading guilty.  Id. at 16-18.  The petitioner stated that he understood.  Id. at 16-19.  The petitioner was then specifically asked if he understood the consequences of pleading guilty and he stated that he did.  Id. at 19.  Petitioners' counsel was asked if based on his experience with his client, and his experience as a lawyer, if he believed that the petitioner fully understood the consequences of the plea.  Id. at 19.  Petitioners' counsel stated that he believed the petitioner fully understood the consequences of his guilty plea.  Id.  At that time, the government presented the testimony of Detective Brian Purkey to establish a factual basis for the plea.  Id. at 19-22.  After Detective Purkey testified, the petitioner was asked if he would like to make any additions or corrections to Detective Purkey's testimony.  Id. at 23.  The petitioner stated that he did not.  Id.

After the factual basis for the plea was offered, the petitioner entered his plea of guilty.  Id. at 23.  Furthermore, the petitioner stated that his plea of guilty was freely given, with no threat, coercion or harassment.  Id. at 23.  The petitioner again stated that there were no promises or inducements outside that which was contained in the plea.  Id. at 23-24.  The petitioner then denied that he was pleading guilty to protect anyone and verified that he understood his exact sentence could

not be predicted at that time. Id. at 24. The petitioner stated that he believed counsel had adequately

represented him in these proceedings and that nothing was left undone by counsel. Id. Counsel then

verified that he could find no defense to the charges and the petitioner openly admitted his guilt. Id.

at 24-25.

Based on these proceedings, the Court found the petitioner competent to enter a plea of guilty.

Id. at 25. Moreover, the Court found that the petitioner was entering his plea freely and voluntarily,

with knowledge and understanding of the consequences of his plea. Id. The Court then accepted the

petitioner's guilty plea. Id.

It is clear from the record that the petitioner's plea was freely and voluntarily entered.

Blackledge v. Allison, supra ("solemn declarations in open court carry a strong presumption of verity,

and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary

dismissal"); Fields v. Attorney Gen. of Maryland, supra ("Absent clear and convincing evidence to

the contrary, a defendant is bound by the representations he makes under oath during a plea

colloquy."). Thus, this ground has no merit and should be denied.

**C.    Ground Three - Failure of Court to Enforce Conditional Written Plea Agreement**

In this ground, the petitioner asserts that the government failed to abide by the terms of the

plea agreement when it stood mute at sentencing and made no mention of the fact that the petitioner,

and the government, expected the petitioner to receive a base offense level of 30 or less. See

Memorandum (dckt. 2/289) at 53, 55. Moreover, the petitioner argues that the government

abandoned its obligation under the plea agreement to present relevant evidence to justify the quantity

of drugs stipulated to in the plea agreement. Id. at 55. The petitioner then argues that the sentencing

court erred when it accepted the plea agreement under these circumstances. Id. at 56. More

specifically, the petitioner contends that the sentencing court failed to make any express findings as to the amount of drugs involved and erred when it determined the petitioner's base offense level to be 34. Id. at 56-58. The petitioner asserts prejudice in the fact that counsel specifically bargained for the right to dispute the stipulation and that the retention of such a right was a significant inducement for the petitioner's decision to accept the guilty plea. Id. at 58. Ultimately, the petitioner concludes that the Court's failure to uphold the terms of the plea agreement, took away the benefit of his bargain. Id. at 59.

For the reasons set forth in the previous grounds, this claim is without merit. There is absolutely no evidence that there was any agreement outside of the written plea agreement presented to the Court. Moreover, the petitioner's plea, and relevant conduct stipulation, satisfied the government's burden of proof. Based on the petitioner's statements during his Rule 11 hearing, there was simply no reason for the Court to delve further into the plea negotiations. The petitioner freely and voluntarily entered his plea of guilty, and received the full benefit of his bargain.

## D.  Ground Four - Counsel's Failure to File an Appeal

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396,

18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered:  Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, at  478.

In this case, the petitioner asserts that at the conclusion of his sentencing proceedings, he instructed his attorney to file an appeal on his behalf.  See Memorandum (dckt. 2/289) at 75.  Over the next several months, the petitioner asserts that counsel assured him that he was researching the issues for appeal.  Id.  The petitioner asserts that it was not until October of 2004, when he wrote a letter to the Clerk of Court for the Court of Appeals, that he discovered counsel had never filed an appeal.  Id.  Upon his discovery, the petitioner contacted counsel and was told that he no longer represents the petitioner and that he has not represented the petitioner since his sentencing.  Id.

In response to this argument, the government has suggested that petitioner's claim should be dismissed because there is no evidence in the record to show that petitioner ever made a request for his attorney to file an appeal.  However, the government was not privy to the confidential discussions that took place between the petitioner and his attorney.  Moreover, the government has failed to provide any information from the petitioner's attorney regarding what instructions, if any, he received regarding an appeal.

Accordingly, because the petitioner's motion and the Government's response do not conclusively establish that the petitioner is entitled to no relief, an evidentiary hearing is necessary to determine whether the petitioner requested his attorney file an appeal and whether counsel ignored

or refused such instructions.  See 28 U.S.C. §2255 (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); see also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

**E.   Grounds Five and Six**

In his reply to the respondent's response, the petitioner has requested to voluntarily withdraw grounds five and six.  Because the undersigned finds that withdrawal is appropriate, grounds five and six will not be discussed in further detail.

**F.   The Government's Alleged Failure to Properly Respond to the Petition**

In his reply, the petitioner asserts that the respondent improperly grouped together his claims, and that by failing to specifically address each and every ground of the petition, as required by Rule 5(b) of the Rules Governing Section 2255 Proceedings, the respondent conceded those grounds which it did not specifically address.  In its entirety, Rule 5(b) states:

> The answer must address the allegations in the motion.  In addition, it must state whether the moving party has used any other federal remedies, including any prior post-conviction motions under these rules or any previous rules, and whether the moving party received an evidentiary hearing.

It is quite clear that Rule 5(b) does not require the respondent to respond to each and every separate claim individually.  In a case such as this one, where the petitioner has filed numerous claims, largely based on the same factual premise, it is not uncommon nor unreasonable for the respondent to group certain claims together, or rely on the argument in one claim, as a basis for

dismissal of another similar claim.[7] A review of the respondent's response shows that the respondent has in fact appropriately answered the allegations made in the petitioner's motion and that none of the grounds have been conceded.

### III. Recommendation

For the foregoing reasons, the undersigned recommends the following:

(1) the Court enter an Order **DENYING** grounds one, two and three of the petition with prejudice;

(2) the Court enter an Order **GRANTING** the petitioner's request to withdraw grounds five and six and dismissing those claims; and

(3) the Court enter an Order **GRANTING** the petitioner's Motion to Appoint Counsel and Motion for Hearing (dckt. 290) and setting an evidentiary hearing as to ground four.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

[7] Claims made by *pro se* parties are not always easily discernable from the pleadings. Holding the respondent to a strict requirement to answer each and every claim individually and separately is not only burdensome, but impractical. Quite often, it is not until after a response is filed, that a *pro se* party is able to clarify the exact basis for each of his or her claims. Just as the Court is required to liberally construe a *pro se* plaintiffs pleadings in the interests of fairness, the Court should likewise give some leeway to the respondent's interpretation of those same pleadings.

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: May 6, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE